Revised 03/06 WDNY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

### FORM TO BE USED IN FILING A COMPLAINT
### UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983
(Prisoner Complaint Form)


*12 e v 1140 A(SR*

All material filed in this Court is now available via the **INTERNET**.  See **Pro Se Privacy Notice** for further information.

## 1. CAPTION OF ACTION

**A.**    **Full Name And Prisoner Number of Plaintiff:  NOTE:**  *If more than one plaintiff files this action and seeks in forma pauperis status, **each plaintiff** must submit an in forma pauperis application and a signed Authorization or the only plaintiff to be considered will be the plaintiff who filed an application and Authorization.*

1. James Washington (07B2411)
2.

-VS-

**B.**    **Full Name(s) of Defendant(s) NOTE:** *Pursuant to Fed.R.Civ.P. 10(a), the names of __all__ parties must appear in the caption. The court may not consider a claim against anyone not identified in this section as a defendant.  If you have more than six defendants, you may continue this section on another sheet of paper if you indicate below that you have done so.*

1. Andrea Eich                              4.
2. Captain J. Rocker                        5.
3.                                          6.

## 2. STATEMENT OF JURISDICTION

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States.  This action is brought pursuant to 42 U.S.C. § 1983.  The Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), and 2201.

## 3. PARTIES TO THIS ACTION

**PLAINTIFF'S INFORMATION  NOTE:** *To list additional plaintiffs, use this format on another sheet of paper.*

Name and Prisoner Number of Plaintiff:   James Washington (07B2411)

Present Place of Confinement & Address:  Livingston Corr. Fac., 7005 Sonyea Rd.,
    P.O. Box 91, Sonyea, New York, 14556


Name and Prisoner Number of Plaintiff:

Present Place of Confinement & Address:

**DEFENDANT'S INFORMATION  NOTE:** *To provide information about more defendants than there is room for here, use this format on another sheet of paper.*

Name of Defendant:_ Andrea Eich _____

(If applicable) Official Position of Defendant:__ New York State Corrections Officer _____

(If applicable) Defendant is Sued in ___X___ Individual and/or _____ Official Capacity

Address of Defendant:_ Butler Correctional Facility, 14001 Westbury Cutoff Rd., ___
___ P.O. Box 4000, Red Creek, New York, 13143 _____

Name of Defendant:_ J. Rocker _____

(If applicable) Official Position of Defendant:_ Captain, N.Y.S. D.O.C.C.S. _____

(If applicable) Defendant is Sued in ___X___ Individual and/or _____ Official Capacity

Address of Defendant:_ Cayuga Correctional Facility, 2202 State Rt. 38A, _____
___ Moravia, New York, 13118-1150 _____

Name of Defendant:_____

(If applicable) Official Position of Defendant:_____

(If applicable) Defendant is Sued in _____ Individual and/or _____ Official Capacity

Address of Defendant:_____

_____

---

## 4. PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

**A.**     Have you begun any other lawsuits in **state or federal court** dealing with **the same facts involved in this action**?
          Yes_____   No__X__

If Yes, complete the next section.  NOTE: *If you have brought more than one lawsuit dealing with the same facts as this action, use this format to describe the other action(s) on another sheet of paper.*

1.     Names(s) of the parties to this other lawsuit:

       Plaintiff(s):_____

       Defendant(s):_____

       _____

2.     Court (if federal court, name the district; if state court, name the county):_____

       _____

3.     Docket or Index Number:_____

4.     Name of Judge to whom case was assigned:_____

5.      The approximate date the action was filed:_____

6.      What was the disposition of the case?

        Is it still pending?  Yes_____  No_____

            If not, give the approximate date it was resolved._____

        Disposition (check the statements which apply):

    _____ Dismissed (check the box which indicates why it was dismissed):

        _____ By court *sua sponte* as frivolous, malicious or for failing to state a claim
             upon which relief can be granted;

        _____ By court for failure to exhaust administrative remedies;

        _____ By court for failure to prosecute, pay filing fee or otherwise respond to a court
             order;

        _____ By court due to your voluntary withdrawal of claim;

    _____ Judgment upon motion or after trial entered for

        _____ plaintiff

        _____ defendant.

**B.**      Have you begun **any other lawsuits in federal court** which **relate to your imprisonment**?

        Yes_____     No  X

If Yes, complete the next section. NOTE: *If you have brought more than one other lawsuit dealing with your imprisonment, use this same format to describe the other action(s) on another sheet of paper.*

1.      Name(s) of the parties to this other lawsuit:

        Plaintiff(s):_____

        _____

        Defendant(s):_____

        _____

2.      District Court:_____

3.      Docket Number:_____

4.      Name of District or Magistrate Judge to whom case was assigned:_____

    _____

5.      The approximate date the action was filed:_____

6.      What was the disposition of the case?

        Is it still pending?  Yes_____  No_____

            If not, give the approximate date it was resolved._____

Disposition (check the statements which apply):

____ Dismissed (check the box which indicates why it was dismissed):

     ____ By court *sua sponte* as frivolous, malicious or for failing to state a claim upon which relief can be granted;

     ____ By court for failure to exhaust administrative remedies;

     ____ By court for failure to prosecute, pay filing fee or otherwise respond to a court order;

     ____ By court due to your voluntary withdrawal of claim;

____ Judgment upon motion or after trial entered for

     ____ plaintiff

     ____ defendant.

---

## 5. STATEMENT OF CLAIM

For your information, the following is a list of some of the most frequently raised grounds for relief in proceedings under 42 U.S.C. § 1983.  (This list does not include **all** possible claims.)

| | | |
|---|---|---|
| • Religion | • Access to the Courts | • Search & Seizure |
| • Free Speech | • False Arrest | • Malicious Prosecution |
| • Due Process | • Excessive Force | • Denial of Medical Treatment |
| • Equal Protection | • Failure to Protect | • Right to Counsel |

**Please note that** it is not enough to just list the ground(s) for your action.  You **must** include a statement of the facts which you believe support each of your claims.   In other words, tell the story of what happened to you but do not use legal jargon.

**Fed.R.Civ.P. 8(a)** states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted.  Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial."  Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995). **Fed.R.Civ.P. 10(b)** states that "[a]ll averments of claim ... shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a single set of circumstances."

---

### Exhaustion of Administrative Remedies

Note that according to **42 U.S.C. § 1997e(a)**, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prison er confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

You must provide information about the extent of your efforts to grieve, appeal, or otherwise exhaust your administrative remedies, and you must attach copies of any decisions or other documents which indicate that you have exhausted your remedies for each claim you assert in this action.

4

**A. FIRST CLAIM:** On (date of the incident) __June 28, 2012__ ,
defendant (give the **name and position held** of **each defendant** involved in this incident) __N.Y.S. Correction's__
__Officer, Andrea Eich__

did the following to me (briefly state what each defendant named above did): __intentionally write and file__
__a completely fabricated misbehavior report against the plaintiff, in__
__retaliation for plaintiff exercising his right to seek redress of a grievance__
__by writing a letter, on June 25, 2012, to Butler C.F. Superintendent__
__(Zenzen), in which he complained of threats made towards him by defendant__
__Eich.__
__      2) As a direct result of the false misbehavior charges levied against__
__him by C.O. Eich, plaintiff was ...(continued on "additional facts)__

The constitutional basis for this claim under 42 U.S.C. § 1983 is: __First Amendment, Fourteenth__
__Amendment__

The relief I am seeking for this claim is (briefly state the relief sought): __$50,000 Compensatory and__
__          $100,000 Punitive Damages__

### Exhaustion of Your Administrative Remedies for this Claim:

Did you grieve or appeal this claim? __X__ Yes _____ No   If yes, what was the result? __No Response__

Did you appeal that decision? __X__ Yes _____ No   If yes, what was the result? __Again, No Response__
__(see attached copy of letter sent to C.O.R.C.)__

*Attach copies of any documents that indicate that you have exhausted this claim.*

If you did not exhaust your administrative remedies, state why you did not do so: __Plaintiff believes that by__
__their actions, D.O.C.C.S. officials have hindered his efforts towards__ (cont.)

**A. SECOND CLAIM:** On (date of the incident) __July 17, 2012__ ,
defendant (give the **name and position held** of **each defendant** involved in this incident) __Captain, J. Rocker,__
__N.Y.S. D.O.C.C.S.__

did the following to me (briefly state what each defendant named above did): while acting as Hearing
Officer for the Superintendent's Proceedings held in the matter regarding
the (false) misbehavior report filed on June 28, 2012, by defendant Eich
(First Claim), in an intentional effort to further the retaliatory measures
initiated by defendant Eich, knowingly deprived plaintiff of a fair hearing
by denying him the "due process" to which he was entitled.

(FACTS)

25) On July 4, 2012, plaintiff was served a copy of a misbehavior report...

The constitutional basis for this claim under 42 U.S.C. § 1983 is: First and Fourteenth Amendments

The relief I am seeking for this claim is (briefly state the relief sought): $50,000 Compensatory and
$100,000 Punitive Damages

### Exhaustion of Your Administrative Remedies for this Claim:

Did you grieve or appeal this claim? __X__ Yes _____ No   If yes, what was the result? The disciplinary
determination was "reversed" on September 19, 2012. (see attached notice)

Did you appeal that decision? _____ Yes _____ No   If yes, what was the result? _____

*Attach copies of any documents that indicate that you have exhausted this claim.*

If you did not exhaust your administrative remedies, state why you did not do so: _____

**If you have additional claims, use the above format and set them out on additional sheets of paper.**

### 6. RELIEF SOUGHT

*Summarize the relief requested by you in each statement of claim above.*

Plaintiff seeks a total of $100,000 in compensatory, and $200,000 in
punitive damages. Plaintiff seeks compensatory damages for loss of (cont.)

Do you want a jury trial? Yes_X_ No____

Additional Facts

First Claim:

...immediately transferred to the Special Housing Unit at Cayuga CF; which effectively terminated the Alcohol and Substance Abuse (ASAT) program he had been participating in since May 7, 2012. Plaintiff was further subjected to an unfair Superintendent's Hearing in which defendant Eich provided false testimony, and through which plaintiff received, in addition to the 20 days he had already spent in segregated confinement, an additional disposition of 60 days confinement and loss of privileges. On July 23, 2012, plaintiff was again transferred, this time to Attica CF's (SHU).

facts

3) On April 19, 2012, plaintiff was transferred form Groveland CF to Butler CF to participate in their (ASAT) program, where after signing the participation contract, he began the treatment program on May 7, 2012. On the same day, plaintiff also began a work assignment in the messhall.

4) On June 16, 2012, in the messhall at Butler CF, where defendant Eich worked as regular relief officer, an innocuous incident occurred between the plaintiff and the defendant. However, the incident was misconstrued by the defendant who jumped to the wrong conclusion that plaintiff had committed a lewd act. Defendant Eich began to severely reprimand the plaintiff. When plaintiff attempted to explain to C.O. Eich that she had misinterpreted the incident, the defendant "ordered" plaintiff to "shut-up I don't want to hear it."

5) A few minutes after the above incident, as plaintiff approached the defendant to retrieve his I.D. card, before leaving the messhall, C.O. Eich said to plaintiff "if it happens again, I'm going to write

(1)

you a tier III ticket and you'll be shipped out of here to the "box" at Cayuga (CF) so fast it'll make your head swim."

6) On June 25, 2012, a second confrontation (stemming from the first) occurred between the plaintiff and defendant Eich. As plaintiff was leaving the gym, at approx. 8:30 PM, C.O. Eich, in the presence of another (female) officer, made more threatening remarks towards plaintiff, the content of the remarks were such that plaintiff feared they would be interpreted by the other C.O. to mean that plaintiff is some sort of sexual predator. Therefore;

7) Immediately upon returning to his housing unit, plaintiff wrote a letter to the Superintendent of Butler CF to complain of C.O. Eich's threats and asking for some sort of mediation in order to set the matter straight.

8) The following day, June 26, 2012, plaintiff was interviewed at the gym by Lieutenant (Marsh?) who informed plaintiff that he had been sent by Captain Anson to investigate the threat allegations plaintiff had written in the letter to Superintendent (Zenzen). During the course of the interview plaintiff described both the June 16th and June 25th incidences, in their entirety, to the lieutenant.

9) Later, the same morning of June 26, 2012, plaintiff met C.O. Collins (who had been plaintiff's dorm officer there at Butler CASAT some twenty years prior) on the walkway. C.O. Collins intimated to plaintiff that news of his letter to the Superintendent had become a topic of conversation at the facility. Plaintiff went on to explain to C.O. Collins that this hole mess was the result of a misinterpretation. Then plaintiff asked C.O. Collins if he would speak to C.O. Eich on his behalf – he agreed to do so. However;

10) On the morning of June 27, 2012, at approx. 6:30 AM, plaintiff

(2)

was sitting in the messhall dining area, reading and drinking coffee, as was his regular pre-work routine, when defendant Eich entered the messhall and asked plaintiff to "step outside." Plaintiff complied.

11) Once outside, defendant Eich confronted plaintiff about the letter he had written to the Superintendent, saying, (1) "I don't care who you write to, I've got enough time on the job to answer anything that comes my way." (2) " How dare you ask another oficer (C.O. Collins) to speak to me." (3) "You're nothing but a convict and a liar." And (4) " Your days at Butler are numbered." This confrontation was interrupted by the appearance of a (as yet unidentified) C.O., who worked the messhall that day.

12) On the following morning, June 28, 2012, defendant Eich was on duty in the messhall when plaintiff reported to his work assignment at 6:15 AM. As usual, plaintiff read and drank coffee until breakfast was served. While eating breakfast, plaintiff was joined by another inmate (Shannon Jones), who had apparently either witnessed or heard about the previous morning's confrontation between the plaintiff and the defendant. Inmate Jones asked "what was that all about." As plaintiff was explaining the situation to Jones, defendant Eich came from the kitchen area into the dining area and began speaking to the same (unidentified) C.O. who had interrupted the previous morning's confrontation.

13) After finishing breakfast, inmate Jones left and plaintiff continued to sit and read until he was called to the serving line to begin his work day. The "chow run" began approx. 7:00 AM. Approx 5 to 7 minutes later plaintiff noticed Sergeant Porter and two C.O.s enter the messhall. They came directly into the kitchen area and removed plaintiff from the serving line and directed that someone take his

(3)

place. And without saying anything, they escorted plaintiff to a holding cell in the medical unit.

14) After placing plaintiff in the holding cell, Sgt. Porter entered the cell (alone) and said to plaintiff, "I don't give a damn about any letter, you're lucky I'm getting you out of here (Butler) this morning." Sgt. Porter then left.

15) Approx 2 hours after being placed in the holding cell, around 9:30 AM, plaintiff was escorted back to his housing unit where his property was packed, and less than an hour later, still without being notified of any charges, plaintiff was transferred to Cayuga C.F. and placed in their (SHU).

16) By the time plaintiff arrived at Cayuga CF he had become so distraught over the sudden turn of events that he immediately requested mental health assistance. At approx 1:30 PM that afternoon, plaintiff was transferred, once again, to Mid-State C.F.'s Mental Health Unit, where he was stripped of all his clothing and given a coarse vest to wear, and 2 coarse blankets, and placed in an "observation cell" where he remained, under 24hr (camera) surveillance until July 3, 2012.

17) During plaintiff's stay at Mid-State's (MHU), he was forced, by virtue of his "confined inmate" status, to endure torturous conditions. When, beginning on June 29, 2012, and lasting through July 1, 2012, the mentally ill inmate housed in the cell adjacent to plaintiff took exception to plaintiff's request that stop yelling. The inmate responded by commencing an intentional noise campaign. The inmate started yelling even louder and included other nonsensical ranting and raving. At regular intervals he would begin beating on our common wall. At night, he would jump up and down on his bed, or beat on his bed – which was attached to plaintiff's bed by common

(4)

bolts. Plaintiff had to resort to sleeping on the floor to avoid the physical disturbance. Plaintiff's many complaints to the Mid-State corrections staff went unheeded.

18) On July 2, 2012, during his morning interview with the Mid-State Mental Health staff (doctor and social worker), plaintiff complained of the toxic conditions, and asked to be discharged without further treatment. Plaintiff was discharged the following day  (July 3, 2012) and returned to Cayuga C.F.

19) Therefore it was not until July 4, 2012, that plaintiff received (was served) a copy of the June 28, 2012, misbehavior report that defendant Eich had written. After reading the misbehavior report, plaintiff became angry and distraught all over again. He immediately wrote letters to (1) NYS Inspector General's Office, (2) The Federal Court (WDNY), and (3) the D.O.C.C.S. Office of Mental Health, asking for an investigation into this matter.

20) On the basis of defendant Eich's false misbehavior charges, a Superintendent's Proceeding was commenced on July 10, 2012, at Cayuga C.F., where as a result of defendant Eich's false testimony (and other procedural defects (the subject of Claim # 2), on July 17, 2012, plaintiff was found guilty on (3) of the (5) charges alleged in the misbehavior report. Plaintiff was sentenced to 4 months of confinement ( not counting the 20 days he had already spent in confinement) and loss of privileges - 2 months were suspended.

21) Plaintiff filed an appeal of the July 17, 2012, disciplinary determination and disposition with the Commissioner of Corrections that very same day. In his appeal, plaintiff made his "retaliation" claim a constituent element of the matter for which he was seeking review (see attached copy of "APPEAL TO COMMISSIONER").

22) On July 19, 2012, plaintiff was transferred to Attica C.F., where after spending another 4 days in an observation cell in their mental health unit, he served out the remainder of confinement sentence in their (SHU)

23) On ~~July~~ Sept. (#) 17, 2012, after spending a total of 80 days in segregated confinement, plaintiff was released from Attica's (SHU) and, without the benefit of any type of orientation, placed in Attica's general population.

24) On September 20, 2012, plaintiff received notice that the Commissioner's designee, Director/Special Housing, Albert Prack, had reviewed and reversed the July 17, 2012, determination. Plaintiff also received notice from the Captain's Office at Attica that the record of said disciplinary action had been expunged (see attached document).

SECOND CLAIM
(continued from Complaint pg.6)

25)...written by defendant, C.O. Eich, on June 28, 2012. At which time plaintiff, due to his confinement, requested the service of an assistant. Plaintiff chose the names of 3 civilians from the list possible assistants. However;

26) On July 5, 2012, plaintiff was advised that "none" of his choices for assistant were available. Plaintiff chose 3 different names, and in doing so, he inadvertently chose a member of the Cayuga CF, security staff: Sergeant Appleby.

27) On July 6, 2012, Sgt. Appleby visited plaintiff at the Cayuga SHU. At which time plaintiff advised Sgt. Appleby that this was a blatant case of retaliation. Plaintiff then requested that Sgt. Appleby obtain a copy the June 25,2012 letter of complaint he had written to the Superintendent

(6)

of Butler CF

28) Plaintiff also requested that Sgt. Appleby interview a list of potential witnesses. Included in plaintiff's list of witnesses were inmates Jones and Randall, and Corrections Officer C.O. Collins. Plaintiff then asked for his (Appleby's) help in Indentifying the officer who was present in the messhall on June 27th and 28th (2012). Yet after his initial visit, plaintiff never heard form or saw Sgt. Appleby again.

29) The Superintendent's Hearing was commenced on July 10, 2012, with defendant, Captain Rocker as hearing officer.

30) At the start of the July 10, 2012, hearing, plaintiff entered a procedural objection to the disciplinary proceedings on the grounds that New York State Law expressly prohibits the commencement of disciplinary action as a retaliatory measure for making complaints concerning institutional conditions; Plaintiff's objection was ignored.

31) Plaintiff then proceeded to advise defendant Rocker - on the record - that defendant Eich had written the June 28, 2012, misbehavior report in retaliation of a June 25, 2012 letter of complaint he had sent to the Supt. of Butler CF, regarding threats she had made towards him. At that point the hearing was adjourned, until July 13, 2012.

32) On July 13, 2012, defendant Rocker resumed the hearing by denying plaintiff the documents he had requested through his assistant (Sgt. Appleby). He then went on to deny plaintiff's request to call C.O. Collins as a witness. Next, he (Rocker) informed plaintiff that the inmate witnesses he had requested (through Sgt. Appleby) had been interviewed by Security staff at Butler and both have refused to testify.

33) Since the June 25, 2012, incident never happened, defendant Rocker, by deliberately denying plaintiff the opportunity to obtain and present documentary evidence, or call witnesses who could substantiate his retaliation claim, rendered plaintiff defenseless and frustrated.

34) Furthermore, as stated above, the Superintendent's hearing in this matter had been delayed due to plaintiff's confinement in Mid-State C.F.'s Mental Health Unit (June 28, 2012 thru July 3, 2012). Therefore, plaintiff's mental state became an issue to be considered during the disciplinary proceedings. However, defendant Rocker, never considered plaintiffs mental state before sentencing him to additional segregated confinement.

35) Defendant Rocker found plaintiff guilty of (3) out of the (5) charged misbehavior violations, and without crediting plaintiff with the 20 days he had already spent confined, sentenced him to an additional 60 days confinement and loss of privileges.

36) Again, as stated above, defendant Rocker's July 17, 2012 determination and disposition of this matter was "reversed" by the D.O.C.C.S. Commissioner's designee, Albert Prack, on September 19, 2012.


Exhaustion


37) (continued from Complaint pg #5)...exhaustion of his administrative remedies.

38) The alleged incident occurred at Butler C.F. on June 28, 2012. Plaintiff was transferred to Cayuga C.F. the same day. On July 16, 2012, plaintiff did write a grievance and sent it directly to the Superintendent of Cayuga CF, Mr Stallone - utilizing the expedited process, which plaintiff believed was warranted in this case.

39) However, on July 19, 2012, just 2 days after the conclusion of the Superintendent's hearing, plaintiff was transferred, once again, to Attica CF, where he was told by the grievance supervisor, during his (SHU) rounds, that if I had already filed a "retaliation" grievance at Cayuga CF, then I would have to wait for a response from Cayuga CF.

40) After waiting the allotted time for a response from Cayuga CF, plaintiff filed a grievance "appeal" on August 13, 2012, by writing a letter to C.O.R.C. regarding this matter. Plaintiff would note that a response from C.O.R.C. was not received by plaintiff until November 5, 2012, yet the response was dated August 29, 2012. Plaintiff believes that the lack of response from D.O.C.C.S. officials should preclude them from raising any defense based upon lack of exhaustion.

41) Furthermore, plaintiff would submit that he also sought administrative exhaustion when he made his "retaliation" claim a constituent element of his direct appeal of the disciplinary proceedings held in this matter. (see copy of Appeal to Commissioner)

## Compensation

42) Plaintiff seeks compensatory damages for the retaliatory transfers to successively higher security level facilities; the loss of participation in his drug treatment (ASAT) program; the loss of his minimum security classification; plus the amenities in his prison living conditions and loss of the limited liberty enjoyed by prisoners that resulted form his segregated confinement, in that he was confined for 23 hrs per day in a cell approx 60 square feet, and deprived of most of his personal property, as well the ability to work, attend spiritual programs, watch television, associate with other prisoners,

attend outdoor recreation in a congregate setting, engage in sports and other congregate recreational activities, attend meals with other prisoners.

43) While plaintiff does not seek compesation for mental or emotional distress, he does believe that his confinement in an observation cell, without clothes, under 24 hrs camera surveillance and being forced to endure the ranting and raving of a mentally ill inmate, should be considered "atypical" when compared to the confinement conditions experience by other prisoners.

44) Plaintiff seeks punitive damages against defendants, C.O. Eich, and Captain Rocker for their willful and malicious retaliatory conduct.

FORM 2171B (4/01)

**STATE OF NEW YORK – DEPARTMENT OF CORRECTIONAL SERVICES**

_BUTLER_ **Correctional Facility**

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| WASHINGTON, JAMES | # 07B2411 | B2 - 19B |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| MESSHALL | 6-28-12 | Approx 6:50 AM |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES**

107.10 – interference      102.10 – threats by Gesture

107.11 – harassment      101.20 – Lewd Conduct

106.10 – Direct Order

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

On the above date and approximate time, I C.O. Eich was standing behind the Serving line (facing the Dining area) of the Messhall. I observed inmate Washington # 07B2411 Staring at me Smiling while rubbing his private parts with his left hand (on the outside of his pants). Washington was Seated in the first seat of a dining room table, Closest to the Serving line. Inmate Washington winked at me, at the Same time placing his right hand inside his pants and Continued to rub his private parts. Washington mumbled Something, as he stared at me and winked again. I felt very threatened by his behavior, so I informed Sgt. Porter immediately of incident. Sgt. Porter arrived in Messhall with 2 officers to escort inmate Washington out of messhall.

Please note: I verbally counseled Inmate Washington on 6/16/12 for his behavior of a Similar nature. I gave Washington the benefit of the doubt, and no ticket was written. (AE)

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 6/28/12 | CO A. EICH | Aich | CO. |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)      SIGNATURES:**

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)      FIRMAS:      1.

2.                                                3.

**NOTE: Fold back Page 2 on dotted line before completing below**

| DATE AND TIME SERVED UPON INMATE | 7-4-12 | 30/ppm | NAME AND TITLE OF SERVER | CO J. Burns |
|---|---|---|---|---|
| FECHA Y HORA DADO AL RECLUSO | | | NOMBRE Y TITULO DEL QUE ENTREGA | |

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding.  Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o a la información derivada de ella en una demanda criminal.

### NOTICE ♦ AVISO

REVIEWING OFFICER (DETACH BELOW STATEMENT FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held.
Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals.
Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement.
Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

Dist:      WHITE - Disciplinary Office   CANARY - Inmate (After review)

06/28/12          STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES   PAGE   1
DCP004                    SUPERINTENDENT  HEARING DISPOSITION RENDERED

          CAYUGA                              TAPE NUMBER *12-025*

DIN: 07B2411 NAME: WASHINGTON, JAMES E              LOCATION: SH-0C-025

INCIDENT DATE & TIME:      06/28/12   06:50 AM   TIER 3

REVIEW DATE:               06/28/12          BY:  LT   MARCH

DELIVERY DATE & TIME:    *7/4/12  1:30 pm* BY: *CO  J Burns*

HEARING START DATE & TIME: *7/12/12  12:54 pm* BY: *Capt J. Rocker*

HEARING END DATE & TIME: *7/17/12  9:30 am* BY: *Capt J. Rocker*
WAS THERE NEED FOR A FORMAL MENTAL HEALTH/INTELLECTUAL CAPACITY ASSESSMENT? Y / (N)
DOES THIS MISCONDUCT MEET THE CRITERIA FOR WORKPLACE VIOLENCE?   Y /(N)
CHARGE
NUMBER     DESCRIPTION OF CHARGES            REPORTED BY          DISPOSITION

107.10    INTERFERENCE WITH EMPLOYEE       CO   A. EICH          *Guilty*
------    --------------------------       ----  ------------------

107.11    HARASSMENT                                             *~~Not~~ Guilty*
------    --------------------------

106.10    REFUSING DIRECT ORDER                                  *Not Guilty*
------    --------------------------

102.10    THREATS                                                *Not Guilty*
------    --------------------------

101.20    LEWD CONDUCT                                           *Guilty*
------    --------------------------

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE
AMOUNT OF FIVE($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.

| PENALTY CODE | DESCRIPTION | PENALTY MO DAYS | START DATE | RELEASE DATE | SUSPEND MO DAYS | DEFERRED MO DAYS | RESTITUTION $$$$ . ¢¢ |
|---|---|---|---|---|---|---|---|
| *A000* | *SHU* | *4 mo* | *7/17/12* | *9/17/12* | *2 mo* | *4 mo* | |
| *E000* | *Packages* | *4 mo* | *7/17/12* | *9/17/12* | *2 mo* | *4 mo* | |
| *F000* | *Commissary* | *4 mo* | *7/17/12* | *9/17/12* | *2 mo* | *4 mo* | |
| *G000* | *Phones* | *4 mo* | *7/17/12* | *9/17/12* | *2 mo* | *4 mo* | |

X

06/28/12          STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES   PAGE    2
                                        CAYUGA

DCP004              SUPERINTENDENT   HEARING DISPOSITION RENDERED

   DIN: 07B2411 NAME: WASHINGTON, JAMES E                    HEARING DATE: _____

   A. STATEMENT OF EVIDENCE RELIED UPON:

The written report and testimony of CO Eich in which she states that you were staring at her and rubbing your groin area and smiling. CO Eich states that you placed your hand inside your pants and winked at her. You pled not guilty to all charges stating that CO Eich wrote the misbehavior report out of retaliation for a complaint that was written on CO Eich several days earlier. You objected that I would not allow the complaint and investigation to be allowed as evidence. You requested the officer who was working the mess hall on 6/27/11 as a witness (CO Washington Her) and then objected because he testified that he was not in the mess hall on 6/26/11. You objected that the hearing was not started in a timely manner. An extension was granted by the office of Special Housing and even though there was confusion on the dates your hearing was started within 7 days and

   B. REASONS FOR DISPOSITION: completed on the 14th day. This does not prejudice or

To impress upon you that lewd conduct and harassment of female employees can not and will not be tolerated and you will be held accountable for your actions.

complain the time frames of your hearing. You objected that Sgt Appleby did your assistance, however it was Sgt Foster from Bostick and Sgt Harris who interviewed your two potential witnesses. Both witness refused to testify. You objected that I would not call Bostick to find another officer whose name you did not know who may or may not have even been in the mess hall on the 26th of Jan.
I find the report and testimony of CO Eich to be credible in determining your guilt to the charges 102.10, 107.11, and 101.20. I also find the evidence to find you guilty of threats or harassing a direct order.

   C. SPECIAL INSTRUCTION ON VISITATION OR CORRESPONDENCE RESTRICTIONS, REFERRALS
      OR SPECIAL EVENT LOSS:

                    NONE

I HAVE RECEIVED A COPY OF THIS HEARING DISPOSITION DATED: 7/17/12
                                              UNABLE TO SIGN BECAUSE
_____      of RESTRAINTS (JR) 7/17/18        9²⁰ AM
   HEARING OFFICER SIGNATURE      INMATE SIGNATURE   DATE & TIME RECEIVED

YOU ARE HEREBY NOTIFIED OF THE FOLLOWING APPEAL PROCEDURES:

_____FOR TIER II HEARINGS-APPEAL TO SUPERINTENDENT WITHIN 72 HOURS.

__X__FOR TIER III HEARINGS-APPEAL TO COMMISSIONER WITHIN 30 DAYS.

***SUCCESSFUL PRINT COMPLETION***

FORM 2176 (07/02)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## WITNESS INTERVIEW NOTICE (For Superintendent's & Disciplinary Hearings)

_CAYUGA_ _____ Correctional Facility

_Washington_ _J_ _07B2411_
**Inmate Name (Print)**                    **DIN#**

An inmate may call witnesses on his or her behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals.

If permission to call a witness is denied, or if a requested witness testifies outside the presence of the inmate charged and/or if the inmate is not permitted to review the testimony of a witness, the reason for such determination must be recorded on this form and copies given to the inmate by the hearing officer and included in the hearing record.

Reference:  Directive #4932, Sections 253.5 and 254.5.

_Mess Hall officer at Butler CF_
_working on 6/27/12_                   ☒ Permission to call the requested witness is denied.                   _Removed_
**Requested witness:**                          ☐ Requested witness will testify outside inmate's presence.         _this_
                                                ☐ Inmate is not permitted to review requested witness's testimony.  _section_

Date: _7/13/12_   Explanation: _Request to call this unknown officer_
_is denied because this misbehavior report is dated 6/28/12_
_and the officer working on 6/27 would not have been a_
_witness to the incident that took place on 6/28/12. This testimony_
_would not be relevant to this hearing._

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_Investigative Report from 6/25/12_   ☒ Permission to call the requested witness is denied.
**Requested witness:**                          ☐ Requested witness will testify outside inmate's presence.
                                                ☐ Inmate is not permitted to review requested witness's testimony.

Date: _7/13/12_   Explanation: _Your request to obtain the investigative_
_Report from Butler CF dated 6/25/12 is denied for the_
_reason that it is not relevant to the incident that happened_
_on 6/28/12_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_CO Collins_                              ☒ Permission to call the requested witness is denied.
**Requested witness:**                          ☐ Requested witness will testify outside inmate's presence.
                                                ☐ Inmate is not permitted to review requested witness's testimony.

Date: _7/13/12_   Explanation: _Your request to call CO Collins as a_
_witness is denied. CO Collins was not present in the mess hall_
_at the time of this incident therefore he would have no knowledge_
_of this incident that resulted in this misbehavior report_

_Unable to sign because_
_of restraints (JR)_

**Signature** _____          _____          _____          _7/13/12_          _9:50_
          **Hearing Officer**              **Inmate**           **DIN**        **Date Received**      _am_

Distribution:  Original - Hearing Record    Copy - Inmate

FORM 2176 (07/02)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

**WITNESS INTERVIEW NOTICE** (For Superintendent's & Disciplinary Hearings)

_____CAYUGA_____ Correctional Facility

Washington, I                07B2411

**Inmate Name (Print)**                    DIN#

An inmate may call witnesses on his or her behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals.

If permission to call a witness is denied, or if a requested witness testifies outside the presence of the inmate charged and/or if the inmate is not permitted to review the testimony of a witness, the reason for such determination must be recorded on this form and copies given to the inmate by the hearing officer and included in the hearing record.

Reference:  Directive #4932, Sections 253.5 and 254.5.

Investigation + Complaints

**Requested witness:**

☒ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: 7/17/12   Explanation: Your request to ~~request~~ and present A complaint letter and the investigative report is denied for the reason that the letter and the investigative reports ~~are~~ have nothing to do with the incident that took place on 6/28/12 in the mess Hall at Butler C.F.

*****************************************************************************

**Requested witness:** _____

☐ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _____   Explanation: _____

_____

_____

_____

_____

*****************************************************************************

**Requested witness:** _____

☐ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _____   Explanation: _____

_____

_____

_____

_____

Signature _____   unable to sign because of Restraints   07B2411   7/17/12   9:36 AM

Hearing Officer                    Inmate                    DIN       Date Received

Distribution:  Original - Hearing Record   Copy - Inmate

FORM 2178A (5/02)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

# APPEAL FORM TO COMMISSIONER
## SUPERINTENDENT'S HEARING*

Print or Write Carefully

| DIN# | LAST NAME | FIRST NAME |
|------|-----------|------------|
| 07B2411 | Washington | James |

| CURRENT FACILITY | HEARING FACILITY | HEARING DATE |
|------------------|------------------|--------------|
| Cayuga C.F | Same | 7/10/2012 (Beginning date) |

THE SPECIFIC GROUNDS FOR MY APPEAL ARE AS FOLLOWS:

(1) There Never should have been a hearing

This disciplinary action was initiated solely as a retaliation a revenge tactic - the (June 28th) incident never took place. This matter stems from a (June 16th) incident that C.O. Eich misconstrued, which lead to a second incident between C.O. Eich and myself on (June 25th) After this second incident I wrote a letter complaining of her threats toward me to the Supt of Butler C.F. On (June 26th) I was interview by a lieutenant regarding this matter. That same morning, I asked Officer Collins if he would speak with Officer Eich in my behalf - he agreed to do so. However, on the morning of (June 27th) I was confronted again by C.O. Eich - in front of witnesses - at which time she said to me (1) "I don't care who you write to, I've got Enough time on this job to answer anything that comes my way" (2) "How dare you ask another officer to speak to me" (3) You're nothing but a convict and a liar" and (4) "Your days at Butler Are Numbered." The very next morning, C.O. Eich was the messhall officer; I worked there, - giving her the opportunity to concoct this "lewd behavior" scenario. She should be Arrested!

(2) The Superintendents hearing was a complete sham. Since the incident never occured it precludes any type of

| | | |
|---|---|---|
| James Washington | James Washington | 7/17/2012 (cont pg #2) |
| | INMATE'S SIGNATURE | DATE |

*Appeals must be submitted within 30 days of receipt of the disposition.
Mail the top (white) copy to: Director of Special Housing/Inmate Discipline, Central Office

Appeal Letter to Commissioner                                    # 2
(Con't)

defense. However there was ample evidence from which any
prudent person could infer "retaliation-revenge", as motive.
Its clear-cut! Yet every request I made to introduce
evidence (documentation and witness testimony) of retaliation
was denied. Denied despite the fact that C.O. Eichs testimony
included references to prior incidences that were the subject
of my letter to the Supt. I was left defenseless. (see
Witness Interview Notice forms - attached)

(3) Ineffective "Assistance"
    Being confined, I was entitled to have the help of an assistant.
Unwittingly, I chose Sgt Applebee (Cayuga C.F.), he came to
see me 7/6/12. I gave Sgt Applebee a list of documents
I wanted to obtain, and a list of witnesses - some that
could not be properly identified without some investigation.
I never saw Mr. Applebee again. This non-assistance proved
prejudicial during the hearing when I discovered that security
personnel from Butler had interviewed my inmate witnesses
in his stead. They refused to testify. Even more disturbing
is the fact that Sgt Porter - who I believed to be a co-
conspirator in this matter and therefore listed as a witness, was
one of the persons who interviewed my inmate witness (Randall).
I don't think that that was appropriate.

(4) Appellant's mental health condition became an "issue" when it was
used to procure a delay of the disciplinary proceeding based
upon my unavailability. I spent June 28 to July 3rd, (12)
in Mid-State (MHU) isolation ward. Yet, in his disposition
the hearing officer failed to note how he had considered my
mental state of the proceedings.

(5) The disciplinary hearing was commenced after the 7th day
of confinement and ended on the 20th day of confinement,
in violation of the "timeliness" rule.

                                    James Washington        2/17/2012

NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
THE HARRIMAN STATE CAMPUS - BUILDING 2
1220 WASHINGTON AVENUE
ALBANY, N.Y. 12226-2050

BRIAN FISCHER                                          JOSEPH BELLNIER
COMMISSIONER                                           DEPUTY COMMISSIONER
                                                       CORRECTIONAL FACILITIES


REVIEW OF SUPERINTENDENT'S HEARING

NAME:  WASHINGTON, JAMES E              NO.  07B2411

HEARING FACILITY:  CAYUGA


ON BEHALF OF THE COMMISSIONER AND IN RESPONSE TO YOUR RECENT

LETTER OF APPEAL, PLEASE BE ADVISED THAT YOUR SUPERINTENDENT'S HEARING OF

JULY 17, 2012,     HAS BEEN REVIEWED AND REVERSED ON SEPTEMBER 19, 2012.


ALBERT PRACK
DIRECTOR, SPECIAL HOUSING/
INMATE DISCIPLINARY PROGRAM


CC:  FACILITY SUPERINTENDENT
     CENTRAL OFFICE FILES


APPEAL DECISION RENDERED PURSUANT TO SECTION 254.8 OF CHAPTER V AND
ELECTRONICALLY PRODUCED UPON THE AUTHORITY OF THE DIRECTOR OF SPECIAL
HOUSING/INMATE DISCIPLINE PROGRAM.

James Washington (07B2411)
Attica Correctional Facility
Box 149
Attica, New York 14011-0149

August, 13 2012

Central Office Review Committee
D.O.C.C.S.
1220 Washington Ave, Bldg #2
Albany, New York, 12226

Dear C.O.R.C.

In writing to notify you of (2) grievances that I have yet to receive replies to.

On June 25, 2012, I filed a grievance, by writing a letter to Supt. Zenzen of Butler CF, in which I complained of threats made by Butler CO. A. Eich.

On June 26, 2012, I was interviewed by Lieutenant (March?) who informed me, he was sent by the Captain to investigate my threat claims. Later that same morning I asked C.O. Collins if he would speak with C.O. Eich on my behalf - he said he would. However:

On the Morning of June 27, 2012, I was (again) confronted by C.O. Eich, where she made these remarks: (1) "I don't care who you write to, I have enough time on the job to answer anything that comes my way." (2) "How dare you ask another officer to speak with me." (3) "You're nothing but a convict and a liar." And (4) "Your days at Butler are numbered."

The very next morning, June 28, 2012, C.O. Eich "happened" to be the relief officer in the messhall, where I worked. I reported to work as usual (6am, at approx 7am, during the chow-run, I was removed from the serving line,

(Con't pg 2)

(Pg 2)

(Cont)

taken to a holding cell and subsequently transferred to the "box" at Cayuga C.F., where I was transferred again (same day) to an isolation cell at Mid-State C.F's Mental Health Unit.

Therefore, it was not until 7/4/2012, that I learned C.O. Eich had written a "completely fabricated" misbehavior report, dated June 28, 2012, charging me with (5) Tier III violations of the inmate standards of behavior — 2 of which were "sexual" in nature.

At the start of the Superintendents hearing 7/6/2012, I entered an objection to the commencement of the hearing on the grounds that the incident alleged in the misbehavior report never occurred, and that the disciplinary action was commenced solely in retaliation/revenge for the letter I wrote on June 25, 2012, complaining of this officers behavior.

After it became obvious that I was not going to receive a fair hearing, I filed a "retaliation" grievance with Supt. Stallone of Cayuga C.F. on July 16, 2012.

During the hearing, the hearing officer denied my requests to introduce compelling evidence of retaliation into the record — "irrelevant" was the explanation he offered — 3 of the 5 charges were affirmed. Now I'm in the "box" here at Attica, until Sept 17, 2012.

To date, I have not received a reply of my June 25, 2012 letter to Butler C.F Supt Zenzen, nor of July 16, 2012 grievance to Supt. Stallone of Cayuga C.F.

Would you look into these matters please.

Thank You

James Washington

James Washington

cc. file



STATE OF NEW YORK

## DEPARTMENT OF CORRECTIONS
## AND COMMUNITY SUPERVISION

THE HARRIMAN STATE CAMPUS – BUILDING 2

1220 WASHINGTON AVENUE

ALBANY, N.Y.  12226-2050

**BRIAN FISCHER**
COMMISSIONER

August 29, 2012

Mr. James Washington, #07-B-2411
Livingston Correctional Facility
7005 Sonyea Road
PO Box 91
Sonyea, NY 14556

Dear Mr. Washington:

This is to acknowledge receipt of your correspondence dated August 13, 2012.

Contact with the facility administration at Butler and Cayuga Correctional Facilities reveals that you did not file any grievances while you were housed at them.

Directive #4040 provides inmates with an orderly, fair, simple and expeditious method of resolving grievances pursuant to the Correction Law.  The Directive makes no provision for an inmate to refer grievances directly to Central Office.

Sincerely,

Karen Bellamy
Director
Inmate Grievance Program

KRB:cl

cc:  Supt. Randy James, Livingston C.F.
       Supv. Dave Caryl, Livingston C.F. (w/attachment)

RECEIVED

NOV - 5 2012

LIVINGSTON CORRECTIONAL
CORRESPONDENCE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____November 13, 2012_____
                              (date)

NOTE:  **Each** *plaintiff must sign this complaint and must also sign all subsequent papers filed with the Court.*

_____

_____

Signature(s) of Plaintiff(s)

7